**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**ROY MITCHELL UZZLE** **PLAINTIFF**

**v.** **Civil No. 2:26cv149-HSO-BWR**

**KEYSTONE RV COMPANY et al.** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT U.S. BANK NATIONAL ASSOCIATION'S MOTION [7] TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

In this action brought by Plaintiff Roy Mitchell Uzzle against multiple companies, Defendant U.S. Bank National Association has filed a Motion [7] to Compel Arbitration and Stay Proceedings. *See* Mot. [7]; Mem. [8]; *see also* Compl. [1-1]. Plaintiff did not file a response. Defendant's Motion [7] should be granted.

## I. BACKGROUND

This case arises out of Plaintiff Roy Mitchell Uzzle's ("Uzzle" or "Plaintiff") August 25, 2025, purchase of "a new 2025 Keystone Raptor 430 Fifth Wheel Hauler" ("RV") "from Defendant Great American RV Superstores, Inc.," an authorized dealer of Defendant Keystone RV Company, for over $124,000.00. Compl. [1-1] at 2. Uzzle financed his purchase through a Retail Installment Sales Contract ("RISC") with Defendant U.S. Bank National Association ("U.S. Bank"). *Id.* Plaintiff alleges that, shortly after obtaining the RV, he experienced "numerous defects, nonconformities, and failures affecting the structural integrity, mechanical systems, plumbing, electrical systems, and overall habitability of the recreational vehicle." *Id.* at 3.

Uzzle lists a warranty repair history of numerous attempts to repair the defects with the RV. *Id.* at 3-4. On the basis of the defects, the Complaint [1-1] advances nine causes of action: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312; (4) breach of contract; (5) revocation of acceptance; (6) negligent misrepresentation; (7) fraudulent concealment; (8) negligent repair; and (9) liability of U.S. Bank under the FTC Holder Rule, 16 CFR § 433.2. *Id.* at 6-17. Plaintiff originally filed suit in state court, but the case was removed by Defendants on grounds that this Court has federal question jurisdiction under 28 U.S.C. § 1331 based on Plaintiff's claim under the Magnuson-Moss Warranty Act, as well as diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See* Notice of Removal [1].

Defendant U.S. Bank contends (1) that the only claim that Uzzle has specifically leveled against it is liability under the FTC Holder Rule, which, assertedly, "plainly arises out of the RISC," and (2) that the RISC contains an arbitration provision. *See* Mem. [8] at 6. U.S. Bank's Motion [7] seeks to enforce that provision. Uzzle has not filed a response. U.S. Bank's Motion [7] to Compel Arbitration and Stay Proceedings should be granted.

## II. DISCUSSION

### A. Legal Standard

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds Inc.*

*v. Byrd*, 470 U.S. 213, 221 (1985)). The FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Parrott v. Int'l Bancshares Corp.*, 167 F.4th 728, 734 (5th Cir. 2026) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "[T]here is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Id.* (citation omitted).

"Enforcement of an arbitration agreement involves two analytical steps." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). The first is "whether the parties entered into any arbitration agreement at all," and the second asks whether the claim brought by the plaintiff "is covered by the arbitration agreement." *Id.* However, "where the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Id.* "Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator." *Id.* at 202. "Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Id.* (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69, (2010)). In accordance with *Kubala*, a court "look[s] first to whether there is an agreement to arbitrate and second to whether that agreement contains a valid delegation clause." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 745 (5th Cir. 2018).

When assessing whether an agreement to arbitrate was formed, "courts . . . should apply ordinary state-law principles that govern the formation of contracts."

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). "[W]here the validity of a choice-of-law provision has not been challenged, it governs as a matter of contract interpretation." *Lewis v. Epic Games, Inc.*, No. 1:26CV217-HSO-BWR, 2026 WL 3266838, at *2 (S.D. Miss. Oct. 29, 2026); *see Edwards*, 888 F.3d at 745.

B. Analysis

Here, U.S. Bank has adduced competent evidence of an agreement to arbitrate, *see* Mem. [8-1] at 5-6 (RISC Agreement), and of a valid delegation clause, *see id.* at 2, 6. Uzzle has offered no rebutting evidence. Accordingly, the Court applies the steps outlined in *Kubala* to determine whether Uzzle's claims against U.S. Bank should be referred to arbitration. 830 F.3d at 201-02.

1. There is an Agreement to Arbitrate Between Uzzle and U.S. Bank.

U.S. Bank attached the RISC Agreement between itself and Uzzle to its Memorandum [8] in Support of its Motion [7]. The RISC bears Uzzle's signature, and contains an arbitration clause that states, in pertinent part:

> **Agreement to Arbitrate**: Either you [Uzzle] or we [U.S. Bank] may elect in writing, and without the consent of the other, to arbitrate all Claims covered by this provision.
>
> **Claims Covered By Arbitration**: Claims subject to our agreement to arbitrate shall include all of the following: (1) Claims related to or arising out of this Note, as well as any changes to the terms of this Note; (2) Claims related to or arising out of any aspect of any relationship between us that is governed by this Note, whether based in contract, tort, statute, regulation, or any other legal theory; . . . and (4) Claims that relate to the formation, construction, scope, applicability, or enforceability of this arbitration provision. Claims include Claims that arose before we entered into this Note (such as Claims related to advertising) and after termination of this Note.

> **Arbitration**: The party initiating arbitration must initiate such arbitration with the American Arbitration Association ("AAA"). If AAA is for any reason unable to serve, then the parties may agree to a comparable substitute organization. If the parties are unable to agree, then a court of competent jurisdiction shall appoint a comparable substitute organization.

Mem. [8-1] at 5. The Agreement further states that the RISC is governed by the Federal Arbitration Act ("FAA") and the laws of the state governing Uzzle's "account relationship," *id.* at 6, which are the laws of the state of Ohio,[1] *id.* at 2, and that the AAA Consumer Arbitration Rules ("AAA Rules") apply, *id.* at 5.

Under Ohio law, "[t]he essential elements of contract formation are an offer, acceptance, contractual capacity, consideration, manifestation of mutual assent, and legality of object and of consideration." *Bruzzese v. Chesapeake Expl., LLC*, 998 F. Supp. 2d 663, 669 (S.D. Ohio 2014) (citing *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002)). Only acceptance is at issue here. "In contract formation, the manifestation of assent by the offeree constitutes the acceptance." *N. Side Bank & Tr. Co. v. Trinity Aviation, LLC*, 153 N.E.3d 889, 896 (Ohio Ct. App. 2020) (cleaned up). Signing a contract is an ordinary means by which parties manifest assent to its terms. *See Bruzzese*, 998 F. Supp. 2d at 674.

---

[1] The Court understands the term "account relationship" to refer to the account attached to the RISC Note, and that Note explicitly selects Ohio law in a choice-of-law provision. Mem. [8-1] at 2, 6. Regardless of whether Ohio law or the laws of Mississippi (Mississippi being the forum state) should apply, the elements of contract formation in Mississippi are not substantively different from those of Ohio for purposes of the analysis in this case. *See Rogers v. Casey & Co. LLC*, 293 So. 3d 857, 863 (Miss. Ct. App. 2019) (citing *Bert Allen Toyota, Inc. v. Grasz*, 909 So. 2d 763, 768 (Miss. Ct. App. 2005)) (listing the elements of contract formation under Mississippi law); *compare Bruzzese v. Chesapeake Expl., LLC*, 998 F. Supp. 2d 663, 669 (S.D. Ohio 2014) (citing *Kostelnik v. Helper*, 770 N.E.2d 58, 61 (Ohio 2002)) (listing the elements of contract formation under Ohio law).

Here, the record evidence supports the conclusion that Uzzle and U.S. Bank mutually assented to the arbitration clause; Uzzle completed acceptance of the RISC Agreement as the offeree by signing it. Mem. [8-1] at 6. And by not responding to the Motion [7], Uzzle simply has not offered any factual grounds to overcome the "strong presumption in favor of arbitration" under the FAA. *Parrott*, 167 F.4th at 734. On these facts, the Court finds that there is an agreement to arbitrate.

2. <u>There is a Valid Delegation Clause in the RISC.</u>

Under the FAA, parties can agree to arbitrate "gateway" questions of "arbitrability," "such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr.*, 561 U.S. at 69. "When the parties' contract delegates the arbitrability question to an arbitrator . . . a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). Accordingly, "a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues." *Kubala*, 830 F.3d at 202. "Language expressly delegating to an arbitrator the authority to determine the scope and enforceability of an arbitration agreement constitutes a valid delegation," *Lewis*, 2026 WL 3266838, at *6, as does express incorporation of the AAA Rules, *Edwards*, 888 F.3d at 746 ("[E]xpress incorporation of the . . . AAA Rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.") (citations omitted).

The previously adduced facts plainly demonstrate that a valid delegation clause exists here. The RISC states that "[c]laims [c]overed [b]y [a]rbitration" include "[c]laims that relate to the formation, construction, scope, applicability, or enforceability of this arbitration provision." Mem. [8-1] at 5. And the RISC also expressly incorporates the AAA Rules. *Id.* ("Except as modified by this Resolution of Disputes Arbitration provision, AAA shall administer arbitration in accordance with AAA's Consumer Arbitration Rules."). These conditions constitute clear language delegating the scope and enforceability of the arbitration agreement to the arbitrator; the (1) scope and enforceability language and (2) express adoption of the AAA Rules of the RISC each establishing a valid delegation clause. The Court, therefore, has "no power to decide the arbitrability issue," *Henry Schein*, 586 U.S. at 68, and must "refer the claim[s] to arbitration to allow the arbitrator to decide gateway arbitrability issues," *Kubala*, 830 F.3d at 202.

Under Section 3 of the FAA, "any litigation arguably arising under [an arbitration clause] should be stayed pending the arbitrator's decision as to whether the dispute is covered." *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 909 (5th Cir. 2001). Because the Court finds an agreement to arbitrate and valid delegation clauses encompass Uzzle's dispute with U.S. Bank, satisfying *Kubala*'s two-part test, the Court will stay this action as to Uzzle's claims against U.S. Bank, pending the resolution of any arbitration.

## III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant U.S. Bank National Association's Motion [7] to Compel Arbitration and Stay Proceedings is **GRANTED**, and Plaintiff Roy Mitchell Uzzle and Defendant U.S. Bank are directed to arbitration. Uzzle and U.S. Bank are **ORDERED** to institute the arbitration within thirty (30) days of the date of this Order.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, this matter is **STAYED** as to Uzzle's claims against U.S. Bank**.** Uzzle's claims against the remaining Defendants will procced in this Court.

**IT IS, FURTHER, ORDERED** that, Uzzle and U.S. Bank will jointly update the Court as to the continued status of this matter every six (6) months and within thirty (30) days of the completion or dismissal of the arbitration.

**SO ORDERED**, this the 9th day of November, 2026.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE